UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

CHARISSE TAVANO,                                    :
                                    Plaintiff,      :    Case No.: 1:23-8835
                  – against –                       :
                                                    :
CAROLYN DALEY SCOTT, and                            :
HK RECOVERY GROUP, INC.,                            :
                                    Defendants.     :
------------------------------------------------------------------- X

**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Charisse Tavano ("Ms. Tavano"), by her attorneys, CAMBA Legal Services and The Law Office of Ahmad Keshavarz, brings suit against debt collection attorney, Carolyn Daley Scott ("Scott"), and debt collector, HK Recovery Group, Inc. ("HK Recovery"), for violating the Fair Debt Collections Practices Act, 15 U.S.C § 1692 *et seq.*, violating N.Y. General Business Law § 349, committing conversion, and committing negligence *per se* by executing on Ms. Tavano's bank account for a non-existent judgment, and allege as follows:

**PRELIMINARY STATEMENT[1]**

In 2009, Plaintiff Charisse Tavano was sued by her former landlord, Ms. Mihwa Bak, in a holdover action in housing court for rent she did not owe and for possession of an apartment Ms. Tavano left months before. Based on a false affidavit of service, the landlord obtained a judgment for possession of the property. But the court awarded the landlord "$0.00" – in other words, no monetary judgment against Ms. Tavano was granted. Ms. Tavano knew nothing of the lawsuit because she was never actually served with it.

---

[1] This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

Fifteen years later, on October 11, 2022, Ms. Tavano received an email from Chase Bank, stating that her checking account had been overdrawn by $42,443.87. She then learned that a debt collector called HK Recovery Group had purchased a "debt" from Ms. Bak based on the non-monetary judgment and that an attorney, Carolyn Daley Scott, had directed a city Marshal to seize money from Ms. Tavano's account. As a result, Ms. Tavano's only bank account was restrained for one month and over $1,100 of her savings was taken. Ms. Tavano attempted to correspond with Scott and Marshal Biegel through several letters, emails, and phone calls over several months, but she is still missing approximately forty percent of the amount taken. Ms. Tavano is not the first victim of this deceptive conduct – HK Recovery and Scott have a pattern and practice of collecting on nonexistent judgments. HK Recovery and Scott's actions caused considerable distress and interruption to Ms. Tavano's daily life. She was so panicked that it caused her heart to race, and she was unable to sleep.

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the dispute involved predominant issues of federal law under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

2.      The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in the Southern District of New York is proper because all or a substantial part of the events or omissions giving rise to the claims in this action occurred in New York, New York.

## PARTIES

4.      Plaintiff, Charisse Tavano, is a natural person who resides in New York, New York.

5.      Ms. Tavano is a "consumer" as defined by 15 U.S.C. §1692 (a)(3) because she was alleged to owe rent, which constitutes a "debt" under 15 U.S.C. § 1692(a)(5).

6.      Defendant Carolyn Daley Scott, Esq., is a New York attorney. Upon information and belief, Scott is a resident of New York.

7.      Scott is a "debt collector" as defined in 15 U.S.C. §1692 (a)(6) because she regularly collects or attempts to collect, directly or indirectly, debts owed, or due or asserted to be due another. In addition, Scott uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts. Scott has filed hundreds of collection lawsuits in civil court and seeks to enforce putative debts obtained by others.

8.      Scott personally engaged in the deceptive and unconscionable conduct towards Ms. Tavano, including, *inter alia*, signing the income execution falsely alleging that a judgment existed for $19,600, and instructing a city Marshal to seize money from Ms. Tavano's only bank account, even though there was no judgment.

9.      Defendant, HK Recovery Group, Inc. ("HK Recovery") is a debt collector and domestic business corporation, located at P.O. Box 314, Port Jefferson Station, NY 11776. It may be served through its registered agent, Jae Park Associates, Inc., at 50 Hightop Lane, Jericho, NY 11753.

10.      HK Recovery is a corporation organized under the laws of the State of New York. HK Recovery is a registered as a debt collector with the New York City Department of Consumer Affairs. HK Recovery's principal purpose is the purchase of putative consumer debt, primarily (if not exclusively) the purchase of judgments rendered against consumers for lawsuits seeking to collect consumer debts. HK Recovery then collects on those purchased judgments by using lawyers like Scott to collect on those judgments by issuing thousands of information subpoenas,

bank restraints, and garnishments, and sending thousands of collection letters. HK Recovery identified itself on the Exemption Claim form as the current creditor of the putative judgment.[2]

11.     Additionally, HK Recovery regularly collects or attempts to collect, directly or indirectly, debts owed, or due or asserted to be due another. In addition, HK Recovery uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any debts.

12.     HK Recovery is a debt collector as defined by 15 U.S.C. § 1692a(6).

**STATEMENT OF FACTS**

**Ms. Tavano's Former Landlord Commenced a Housing Court Case
and Failed to Obtain a Monetary Judgment**

13.     In 2008, Charisse Tavano was living in an apartment that she wished to vacate.

14.     The lease expired on September 30, 2008, but Ms. Tavano's landlord, Mihwa Bak, asked her to stay for another month at the current rate so that Bak could find another tenant.

15.     Subsequently unable to contact Bak, by phone, Ms. Tavano sent a letter on October 25, 2008 to confirm that she was moving out and that she did not owe any additional rent. **Ex.** A (Vacate Letter).[3]

16.     On February 26, 2009, a 30-day notice was allegedly "hand delivered" to Ms. Tavano at the residence which she had vacated long before. **Ex. B** (30 Day Notice).

17.     Ms. Tavano did not receive this notice. It is unclear why such a notice was allegedly made when Ms. Tavano had vacated the residence months earlier, as she informed Ms. Bak three months earlier in the Vacate Letter.

---

[3] All Exhibits are incorporated into this Complaint in their entirety.

18.     Unbeknownst to Ms. Tavano, Ms. Bak then retained an attorney and on April 7, 2009 filed a lawsuit against her in a Housing Court holdover case, *Bak v. Tavano, et al.,* LT-64158-2009/NY. **Ex. C** (Notice of Petition and Petition).

19.     On April 14, 2009, Ms. Bak allegedly served Ms. Tavano with the Notice of Petition and Petition by conspicuous service at her former address. **Ex. D** (Affidavit of Service).

20.     This Affidavit of Service of the Notice of Petition and Petition was false on its face.

21.     Further, it claimed that Tavano was served at her "dwelling house/usual place of abode within the state," but Bak knew that Ms. Tavano had vacated the apartment, as Ms. Tavano informed her landlord she would in the October 25, 2008 Vacate Letter. *Id.*

22.     Either the process server knowingly made misrepresentations on the Affidavit of Service or relied on misrepresentations by Bak that Ms. Tavano still resided in the apartment.

23.     The Petition sought removal of Ms. Tavano from the premises and a money judgment of $19,600.00 for rent arrears or use and occupancy from December 1, 2008 through March 31, 2009, as well as electric bills and attorneys' fees. **Ex. C** (Notice of Petition and Petition).

24.     This also was false – Ms. Tavano had vacated the apartment, and had provided Bak written notice on October 25, 2008 that she was going to do so, even though she was not obligated to provide such notice under the terms of the lease.

25.     In other words, Ms. Tavano did not owe Bak any money for rent arrears because, as Bak was aware, Ms. Tavano was not in use or occupancy of the apartment from December 1, 2008 through March 31, 2009.

26.     Ms. Tavano did not appear in this Housing Court case because she was not served and was not aware of the lawsuit.

27.     On April 30, 2009, the Housing Court entered a possessory judgment on default after an

inquest. **Ex. E** (Decision and Judgment).

28.     Crucially, the only money judgment entered was for $0.00.[4] *Id.*

29.     In other words, despite her attempt to use a false affidavit of service to create a fictitious debt

against Ms. Tavano, Bak failed to obtain any money judgment against her.

30.     Upon information and belief, Ms. Bak did not accept this failure and instead "sold" a non-

existent money judgment to Defendant HK Recovery.

31.     HK Recovery knew or should have known, at the time of this apparent purchase, that there

was no money judgment against Ms. Tavano. Either HK Recovery saw that the judgment entered was

$0.00 or negligently purchased and began collecting on the non-existent judgment without reviewing

any documents purporting to be a money judgment.

**Defendants Enforce on a Nonexistent Judgment**

32.     Approximately fifteen years later, on the morning of October 11, 2022, Chase Bank sent

Charisse Tavano an email, stating that her account had been overdrawn and that the available balance

was negative $42,443.87. **Ex. F** (October 11 Email).

33.     When Ms. Tavano called Chase, she was transferred to the Legal Department, which informed

her that her account was restrained because of a judgment. The Legal Department instructed her to

visit a branch and collect $3,600.00.

34.     Distraught and crying, she ran to the nearest Chase branch, three blocks away. A Chase

employee handed her $3,600.00 in cash with a receipt, as well as several papers, **Ex. G** (Documents

---

[4] Zero dollar judgments are common in Housing Court. Housing Court actions allow for a less strict form of service
that will not allow a petitioner to obtain a money judgment if the respondent fails to appear. R.P.A.P.L. §735; *Merrbill
Holdings, LLC v. Toscano*, 59 Misc. 3d 129(A) (App Term, 2d Dept. 9th & 10th Jud. Dists. 2018). Ms. Tavano, like
most Housing Court respondents, was served pursuant to R.P.A.P.L. §735, under this less strict standard.  This
prevented the landlord from obtaining a money judgment, although she was able to get a judgment of possession.

Given by Chase). specifically:

    i.    A letter from Chase dated October 11, 2022 stating that it has placed a hold on her account in the amount of $45,723.64, stating it is enclosing the Execution, and stating that the Execution "required us to turn over funds from your account(s) immediately, and we have already done so.";

    ii.    An Execution with Notice to Garnishee dated October 7, 2022 under the (purported) signature of Scott commanding the Marshal to garnish from Chase Bank $19,600 plus post-judgment interest;

    iii.    Marshal's Levy and Demand dated October 10, 2022 demanding Chase to turn over an amount not to exceed $45,723.64, and stating it was attaching the Execution With Notice to Garnishee; and

    iv.    A blank Exemption Claim Form dated October 7, 2022 identifying the name of the "Judgment Creditor or Attorney" as HK Recovery Group," along with an Exemption Notice.

35.    Subsequently, Chase Bank mailed Ms. Tavano the above Documents Given by Chase.

36.    October 11, 2022 was the first time Ms. Tavano knew of the lawsuit or of a putative resulting judgment, and the Documents Given by Chase were the first communication she received from either HK Recovery or Daley.

37.    The October 7, 2022 Execution, sent by HK Recovery and signed by attorney Carolyn Daley Scott, Esq., falsely stated that Mihwa Bak had obtained a judgment against Ms. Tavano in New York County Civil Court on April 7, 2009 for $19,600.00. *Id.*

38.    The Execution was signed by attorney Carolyn Daley Scott, Esq., implying that Scott had performed a meaningful attorney review of the housing court case and had come to a professional legal opinion that the New York County Civil Court had entered a judgment in the amount of $19,600.00. *Id.* In signing the Execution, Scott impliedly represented to Ms. Tavano that there was a valid, existing judgment against her for $19,600.00, plus $23,835.34 in post-judgment interest. When Defendants issued the Execution she knew and intended for it to be sent to Ms. Tavano, as required by NY CPLR 5222(d).

39.    Any meaningful attorney review would have required Scott to pull court records, check the

7

court website, or at least obtain a copy of the judgment through her client. This is especially true because, as previously noted, zero dollar judgments are common in Housing Court.

40.    Either Scott reviewed the records and saw the monetary judgment awarded was for $0, and then falsely represented that there was a judgment against Ms. Tavano for $19,600, or she did not perform any meaningful attorney review but misrepresented that she had by signing the Execution.

41.    The Exemption Claim Form given to Ms. Tavano named HK Recovery as the "Judgment Creditor or Attorney." *Id.* When Defendants generated the Exemption Claim Form, they knew and intended it to be sent to Ms. Tavano as required by CPLR 5222-a(b).

42.    Defendants' misrepresentations caused Marshal Biegel's Levy and Demand, dated October 10, 2022, to falsely state that, with interest and fees, Ms. Tavano owed $45,723.64 to date. *Id.*

43.    The letter from Chase, dated October 11, 2022, stated that because of the judgment, it had put a hold in the amount of $45,723.64 put on her account. **Ex. G** (Documents Given by Chase).

44.    In addition, the misleading Execution by Defendants based on a non-existent judgment caused a $100.00 legal processing fee to Ms. Tavano's account. **Ex. H** (October 2022 Statement).

45.    Even if a monetary judgment entered had been entered against Ms. Tavano, Defendants would have had no lawful right to collect on it as the Defendants never provided Ms. Tavano with a notice of assignment of the putative judgment from Bak to HK Recovery.

46.    Ms. Tavano left the branch feeling bewildered and with several unanswered questions. She did not understand how Ms. Bak could have obtained a judgment, and she was not aware of any court case.

### Ms. Tavano Learns There Is No Judgment and Gives Defendants Notice that No Judgment Exists

47.    When Ms. Tavano later returned to the Chase branch to ask for more information on what had

happened, she was advised to call New York City Marshal Stephen Biegel.

48.     Ms. Tavano called the Marshal's office, asking for a copy of the judgment, and was told to ask the debt collection attorney for it or seek a solution from the courts.

49.     Ms. Tavano then called Scott to ask whether there was a judgment. Scott took down Ms. Tavano's email address and later sent the October 25, 2008 vacate letter and the Notice of Petition for the housing court holdover case. The email did not include any judgment. **Ex. I** (Documents Sent by Scott).

50.     Ms. Tavano called back, asking Scott whether she had a copy of the judgment. Scott replied that she did not, because she was the second attorney and had taken over this case from a different attorney.

51.     On the morning of October 12, 2022, Ms. Tavano woke up to two more emails from Chase, stating that her overdrawn balance had dropped to negative $45,293.65. **Ex. J** (Oct 12 Chase Emails).

52.     Feeling frustrated and upset, Ms. Tavano took the subway to visit the New York County Civil Court clerk's office. The court clerk confirmed that there was no monetary judgment against her, according to the court computer. To be sure, Ms. Tavano ordered the entire file from the archives.

53.     While Ms. Tavano waited for the archived file, she continued to receive regular overdrawn balance emails from Chase. **Ex. K** (October 13 and 14 Emails).

54.     Approximately two weeks later, the court file arrived, and Ms. Tavano went back to Civil Court to copy it, feeding quarters into the court copy machine.

55.     Ms. Tavano also paid $6 for a certified copy of the decision and judgment (showing an award of $0.00), believing that she would need it to convince the Marshal or Defendant Scott there was no monetary judgment against her.  **Ex. L** (Certified Copy of Housing Court Judgment).

56.     Ms. Tavano then traveled to FedEx to scan and email the copied court file to CAMBA Legal

9

Services, which confirmed that there was no money judgment. **Ex. M** (FedEx Receipts).

57.     On October 15, 2022, Ms. Tavano sent a letter with certificate of mailing and by email to Defendant Scott, notifying her that she was trying to enforce a judgment that does not exist and requesting that she cease collection actions and refund the $100.00 in bank fees charged as a result of her deceptive conduct. **Ex. N** (First Tavano Letter). Alternatively, if Defendant Scott believed that there was a judgment against Ms. Tavano, the letter requested that she send Ms. Tavano any proof as soon as possible. *Id.*

58.     On October 16, 2022, Ms. Tavano re-sent the letter by certified mail return receipt requested. *Id.* The letter was retrieved from Ms. Daley Scott's P.O. Box on October 19, 2022. *Id.*

59.     On November 1, 2022, after Ms. Tavano had received the archived court file confirming that there was no judgment, she sent a second letter to Defendant Scott by certified mail return receipt requested and by email, requesting that Defendant Scott release her account and refund the $100.00 bank fee by close of business the following day. **Ex. O** (Second Tavano Letter). The letter was picked up from Defendant Scott's P.O. Box on November 7, 2022. *Id.*

60.     Ms. Tavano heard no response.

61.     Meanwhile, on November 9, 2022, Chase sent Marshal Biegel $1,106.04 from Ms. Tavano's account. **Ex. P** (November 2022 Statement).

62.     The next day, Marshal Biegel returned $671.39, leaving a deficiency of $434.65. *Id.*

63.     On November 18, 2022, Ms. Tavano sent a third letter by email to Defendant Scott, including Marshal Biegel for the first time, asking them to release her account, return any levied money, and cancel or return any fees charged within two business days of receipt. **Ex. Q** (Third Tavano Letter). The Third Letter included the following documents:

     i.    The October 15 Letter that Ms. Tavano previously sent to Defendant Scott, including

proof of mailing and receipt;

ii.    The November 1 Letter that Ms. Tavano sent to Defendant Scott, including proof of mailing and receipt; and

iii.    the entire housing court file, including the $0.00 judgment. *Id.*

64.    On November 19, 2022, Ms. Tavano also sent a duplicate copy of the Third Letter by certified mail return receipt requested to Defendant Scott, Marshal Biegel, and Chase bank, who received them on the same day, November 23, 2023. *Id.*

65.    On November 18, 2022, Defendant Scott's office replied by email, stating that they had emailed Marshal Biegel's office on November 9, 2022 to withdraw and close the execution and that a check for $100.00 was mailed to her on November 14, 2022. **Ex. R** (Scott November 2022 Response).

66.    On November 18, 2022, Marshal Biegel's office also emailed Ms. Tavano, confirming that they had received the release but that no funds were received from Chase. **Ex. S** (Marshal Biegel November 2022 Response).

67.    However, on December 13, 2022, a Chase representative informed Ms. Tavano that they had sent monies from her account to Marshal Biegel's office.

68.    Additionally, she never received a check for $100.00 by mail.

69.    On December 20, 2022, Ms. Tavano sent a follow-up email to Defendant Scott's office, informing them that the held monies were never returned to her account and that she never received a check in the mail. **Ex. T** (December 2022 Emails with Scott).

70.    On December 22, 2022, Ms. Tavano emailed out a fourth letter to Carolyn Daley Scott and Marshal Biegel, explaining that there was still a deficiency of $434.65 and that the fee was never reversed nor reimbursed. **Ex. U** (Fourth Tavano Letter). She sent it by certified mail return receipt requested. *Id.*

71.     The letters were received by December 29, 2022.

72.     On December 27, 2022, she received an email response from Carolyn Daley Scott's office, stating that she will be receiving a refund check for $286.82 in the mail same day and that she would be refunded fees. **Ex. T** (December 2022 Emails with Scott).

73.     On December 27, 2022, Marshal Biegel's office also emailed Ms. Tavano, stating that a refund check for $147.83, their portion of the deficiency, was placed in the mail for her. **Ex. V** (December 2022 Email from Marshal Biegel).

74.     On January 19, 2023, Defendant Scott's office emailed Ms. Tavano, stating that a refund check they had sent in the mail for money received from Marshal Biegel was returned and asking for email confirmation. **Ex. W** (January 2023 Email Correspondence).

75.     Ms. Tavano replied, asking which address they had sent it to. *Id.*

76.     However, their reply was nonresponsive, and Ms. Tavano was not able to get an answer. *Id.*

77.     To date, Ms. Tavano is still missing $434.65 and has not received any checks in the mail.

### Defendants Have a Pattern and Practice of Collecting on Consumers Where No Judgment Exists

78.     This is not the first time that HK Recovery or Scott has been sued for FDCPA violations.

79.     Defendants willfully or knowingly engage in a pattern and practice of purchasing judgments that they know are not valid or never existed, and enforce on these nonexistent judgments.

80.      HK Recovery, along with other debt collectors, were sued in two New York Supreme Court actions for knowingly purchasing and collecting upon thousands judgments that they knew were obtained by false affidavits of services and of merit.   *Carolyn Walker-Diallo v. Virgo Capital, LLC et al*, New York County Supreme Court Index No. 450474/2022-NY and *Gladys Bostic et al  v. Virgo Capital, LLC et al.* New York County Supreme Court, Index No. 450474/2022-NY. The result of

those cases was the vacating of thousands of fraudulent judgments and the discontinuances of those actions.  **Ex. X** (*Carolyn Walker-Diallo* Complaint); **Ex. Y** (*Gladys Bostic* Complaint).

81.     In a similar individual action in federal district court, in *Joseph Columbus v. Carolyn Daley Scott, HK Recovery Group, Ronald Hughes, and Pinpoint Technologies, LLC*, the consumer-plaintiff alleged that HK Recovery knew that it had purchased worthless judgments that had resulted from sewer service. Additionally, the consumer alleged that Scott does not conduct any meaningful attorney review or exercise any independent judgment in deciding whether to send a judgment to a city Marshal for garnishment.  *Columbus v. Scott, et al.*, 1:19-cv-6722-RA, (S.D.N.Y. July 18, 2019). **Ex. Z** (*Columbus* Complaint).

82.     In *Thomas J. Catalano II v. Carolyn Daley Scott*, the consumer-plaintiff alleged that Scott had intentionally executed on a consumer's bank account after receiving service of a signed Order to Show Cause requiring a stay of enforcement. The consumer then filed a second Order to Show Cause requesting that their money be returned, and Scott failed to appear at the hearing date set by the court. *Catalano v. Scott*, 5:18-cv-1134-DNH-ATB (N.D.N.Y. September 20, 2018). **Ex. AA** (*Catalano* Complaint).

83.     HK Recovery has settled *Columbus*. Scott has settled both *Columbus* and *Catalano*.

### Defendants' Misconduct Inflected Damages on Ms. Tavano

84.     Ms. Tavano is still missing $434.65, and has received no checks in the mail from HK Recovery, Carolyn Daley Scott, Marshal Biegel, or Chase.

85.     This incident has caused her to feel anxious and panicked. Her heart has raced, she has had difficulty breathing, and she has bitten her nails as a result of anxiety.

86.     She also experienced a panic attack. She previously only had a panic attack after her divorce, almost 15 years ago.

87.    Because of the stress, it takes her a full hour to fall asleep, and that is with medication.

88.    She has made several visits to her doctor because of her stress, who prescribed her medicine to help her sleep.

89.    Ms. Tavano is also hesitant to use her Chase account or to open up another bank account for fear that it will be restrained again based on a non-existent judgment.

90.    She asked her employer to stop direct deposits into the Chase account and to issue physical paychecks instead, which made her feel humiliated.

91.    She would give the paychecks to her son, who withdrew cash for her to use for daily expenses.

92.    She also asked her son to pay her bills, because she had difficulty paying bills without her checking account.

**FIRST CLAIM FOR RELIEF**
**Violations of the Fair Debt Collections Practices Act**

93.    Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this complaint as if fully set forth herein.

94.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantages, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

95.    Congress designed the FDCPA to be enforced primarily through private parties—such as plaintiff—acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he

committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

96.     Defendants violated §§ 1692(e) and 1692(f) of the FDCPA in connection with an attempt to collect a putative debt. By way of example and not limitation, Defendants materially violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; falsely representing or implying that an individual is an attorney or that a communication is from an attorney; the representation or implication that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is

expressly authorized by the agreement creating the debt or permitted by law.

97.    Defendants' violations of 15 U.S.C. § 1692, *et. seq.*, render them liable to Plaintiff.

98.    The injuries inflicted on Plaintiff by the Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

99.    Ms. Tavano  suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited economic damages for taking the subway to court, cost of postage, and loss of time.

100.    Ms. Tavano's injuries are analogous to, inter alia, the following common law claims: negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

101.    The Defendants had a duty to exercise reasonable care in the collection of debts, including not restraining a consumer's bank account without a money judgment against the consumer.

## SECOND CLAIM FOR RELIEF
### N.Y. Gen. Bus. Law § 349(a)

102.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

103.    New York General Business Law § 349(a) prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state…."

104.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h). An individual

so injured may also be awarded treble damages and punitive damages.

105.    Defendants violated N.Y. Gen. Bus. Law § 349 by engaging in deceptive acts and practices in the conduct of their businesses that caused specific harm to Ms. Tavano and impacted similarly-situated consumers.

106.    For these reasons and for other reasons stated in the statement of facts, Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damages award. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

107.    As a direct and proximate result of these violations of N.Y. Gen. Bus. Law § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, and punitive damages, together with costs and attorneys; fees.

108.    The injuries inflicted on Plaintiff by the Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

109.    Ms. Tavano  suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited economic damages for taking the subway to court, cost of postage, and loss of time.

110.    Ms. Tavano's injuries are analogous to, *inter alia*, the following common law claims: negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

17

111.    The Defendants had a duty to exercise reasonable care in the collection of debts, including not restraining a consumer's bank account without a money judgment against the consumer

### THIRD CLAIM FOR RELIEF
**Conversion**

112.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

113.    The elements of conversion in New York State include: (1) having a possessory interest in property; and (2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

114.    Property subject to conversion includes readily identifiable funds from a bank account.

115.    Defendants intentionally and without authority, assumed and exercised control over Ms. Tavano's money, interfering with her right to possession of the same, by: (a) causing Ms. Tavano's bank account to be restrained; and (b) causing money to be withdrawn from Ms. Tavano's bank account for garnishment and for bank fees.

116.    Defendants' improper restraint of Ms. Tavano's money, which harmfully interfered with Ms. Tavano's rights to control her own property, constitutes conversion.

117.    To date, Defendants continue to hold $434.65 of Ms. Tavano's money.

118.    For the reasons stated in the statement of facts, and under the aforementioned Counts, Defendants' conduct is gross, wanton, or deliberate, and demonstrates a high degree of moral culpability. The conduct demonstrates malice, insult, and/or willful or reckless disregard of Ms. Tavano's rights, or other aggravated acts. Defendants' conduct evidences a high degree of moral

culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

119.     For these reasons, Plaintiff is entitled to exemplary and punitive damages, in addition to actual damages. Actual damages are outlined in the above statement of facts, and incorporated by reference.

## FOURTH CLAIM FOR RELIEF
### Negligence *Per Se*

120.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

121.     Defendants owed Ms. Tavano a duty pursuant to the FDCPA, which is designed to protect consumers in part by prohibiting debt collectors from using false, deceptive or misleading representations or means; misrepresenting the character, amount or legal status of the debt' using false, deceptive or misleading representations or means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation), unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

122.     Creditors and debt collectors in general owe debtors a duty of reasonable care in collecting their debts. *Hawkins-El v. First American Funding, LLC*, 891 F.Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd* 529 F. Appx. 45 (2d Cir. 2013).

123.     GBL § 349 also imposes on Defendants a duty to not engage in deceptive acts and unlawful practices in the conduct of their business.

124.     Defendants breached these duties under the FDCPA and GBL § 349 as outlined in the above complaint.

19

125.    As a direct and proximate result of Defendant's breach of these duties, Ms. Tavano suffered compensable harm and actual damages, including emotional distress.

126.    Defendants' conduct was so flagrant as to transcend mere carelessness and constitute willful negligence or recklessness. Upon information and belief, Defendants have engaged in a pattern and practice of similar behavior against other consumers. As a result, Ms. Tavano is entitled to actual and punitive damages.

## JURY DEMAND.

54.    Plaintiff demands a trial by jury.

## PRAYER

55.        WHEREFORE, Plaintiff requests the following relief:

a.        A declaration that Defendants have committed the violations of law alleged in this action;

b.        Actual damages;

c.        Statutory damages under 15 U.S.C. § 1692k and N.Y. GBL § 349;

d.        Punitive damages under N.Y. GBL § 349 and negligence per se;

e.        Costs, disbursements, and attorneys' fees under 15 U.S.C. § 1692k and N.Y. GBL § 349;

f.        Prejudgment and post judgment interest as allowed by law; and

g.        All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

DATED: Brooklyn, New York

      October 6, 2023

          Respectfully submitted,


/s/_____
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Emma@newyorkconsumerattorney.com


/s/_____
Emma Caterine
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Emma@newyorkconsumerattorney.com


/s/_____
Matthew Schedler, Of Counsel to
Elizabeth Miller, General Counsel
CAMBA Legal Services, Inc.
20 Snyder Avenue
Brooklyn, NY 11226
MatthewSc@camba.org


/s/_____
Pooja Patel, Of Counsel to
Elizabeth Miller, General Counsel
CAMBA Legal Services, Inc.
20 Snyder Avenue
Brooklyn, NY 11226
Phone: (718) 940-6311 ext. 79285
PoojaP@camba.org